IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

  Plaintiff,

v.

A&E Tire, Inc.

  Defendant.

---

## COMPLAINT

---

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of sex, and to provide appropriate relief to Egan Joseph Woodward, who was adversely affected by such practices.

As alleged with greater particularity below, the United States Equal Employment Opportunity Commission ("EEOC" or "Commission") alleges that Defendant, A&E Tire, Inc. ("A&E" or "A&E Tire") engaged in unlawful discrimination against Woodward, a transgender male, when it failed to hire Woodward because of his sex.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1),(3), and 706(g) of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C.§ 2000e-5(f)(1), (3), and (g), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the District of Colorado.

## PARTIES

3.      Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.      At all relevant times, Defendant A&E Tire, a Denver corporation, has continuously been doing business in the State of Colorado and has continuously had at least 15 employees.

5.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## CONDITIONS PRECEDENT

6.      More than thirty days prior to the institution of this lawsuit, Egan Joseph Woodward filed a charge with the Commission alleging violations of Title VII by Defendant.

7.      The EEOC provided Defendant with notice of the charge.

8.      EEOC investigated the charge of discrimination.

9.     On June 30, 2016, the Commission issued a determination informing Defendant of the results of its investigation.

10.     In that determination, the EEOC informed Defendant that it had reasonable cause to believe Defendant had violated Title VII in that Defendant failed to hire Charging Party because of his sex, male, and/or transgender status.

11.     The Commission's determination included an invitation for Defendant to join with the Commission in informal methods of conciliation in an endeavor to eliminate the unlawful employment practices and provide appropriate relief.

12.     Defendant participated with EEOC in conciliation, during which process Defendant and EEOC communicated regarding the alleged unlawful employment practices and how to eliminate and remedy them.

13.     The Commission and Defendant were unable to reach an agreement acceptable to the Commission through the conciliation process.

14.     On June 27, 2017, the Commission issued Defendant a Notice of Failure of Conciliation.

15.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## GENERAL ALLEGATIONS

16.     On or about May 15, 2014, Defendant posted an ad for a managerial administrative and dispatch position online.

17.     On or about May 16, 2014, Woodward completed an application for this managerial position at an A&E Tire store.

18.     Woodward also gave Defendant a copy of his resume.

3

21.    That very same day, just after Woodward completed the application, Manager Derrick Haight interviewed him in person.

22. During the interview, Woodward was wearing traditional male attire (black dress pants and a black and gold stripped shirt).

23.     Woodward also had a goatee.

24.    During the interview, Haight did not realize Woodward was a transgender male.

25.    Haight interviewed Woodward for about 45 minutes.

26.    Woodward and Haight got along well during the interview.

27.    Haight and Woodward discussed that they had similar backgrounds.

28.    In the same vein, Haight told Woodward that Haight was a good old boy from Nebraska.

29.    Both Haight and Woodward grew up in mid-west states.

30.    Haight and Woodward also spoke about annual salary.

31.    When asked by Haight what his salary goals were, Woodward suggested an annual salary of $25,000.00.

32.    Haight responded that he could pay $30,000.00 or $32,000.00.

33.    At the end of the interview, Haight told Woodward that Woodward had the job so long as he could pass all of the screening process, which included a drug test and criminal background check.

34.    After the interview, Haight asked Woodward to take a tour of A&E's premises.

4

35.     Haight and Woodward drove to various locations in Haight's vehicle.

36.     When Haight introduced Woodward to the other A&E employees, he introduced Woodward to them as their new manager.

37.     Haight also drove Woodward across the street to a building Defendant recently purchased to serve as A&E's new service offices.

38.     The building was still under construction.

39.     Haight asked Woodward to go home and sketch what Woodward wanted the offices to look like, since that's where they would all soon be working.

40.     After completing the tour, Haight reiterated to Woodward that Haight wanted Woodward in the position, and that as long as Woodward passed the various screenings, the position was his.

41.     Haight then told Woodward that hopefully Woodward could in come in later that week to complete the drug test.

42.     Before he left A&E Tire that day, Defendant also asked Woodward to complete a "screening consent form" providing Defendant with authorization to complete a background check and providing certain other personal information.

43.     In response to a question on the form asking for other names, Woodward provided his former name, the one assigned to him at birth, which is typically associated with the female sex.

44.     In response to a question asking him to identify his sex, Woodward stated he was female.

45.     Woodward also provided his assigned name at birth on the second page of his application.

46.     Approximately an hour after Woodward left A&E Tire, Haight called Woodward and told him, "I see on your drug test that you checked female."

47.     Woodward confirmed that this was no mistake.

48.     Haight abruptly hung up after stating, "Oh, that's all I need."

49.     Woodward attempted multiple times over the next three weeks to follow up with Defendant about completing his background screenings and starting employment.

50.     On June 10, 2014, Woodward finally managed to speak with Haight.

51.     On June 10, 2014, Haight informed Woodward that Defendant was giving the position to a different applicant.

52.     The selected applicant, Stephen Montes, did not apply for the position with Defendant until May 21, 2014.

53.     Defendant did not interview Montes until June 6, 2014.

54.     Montes began employment on or about June 10, 2014.

55.     Montes began employment about three weeks after Defendant failed to hire Woodward after offering Woodward the job.

## STATEMENT OF CLAIMS

### [Disparate Treatment/Failure to Hire Because of Sex – 42 U.S.C. § 2000e-2(a)]

56.     The allegations and facts found in the preceding paragraphs are fully incorporated herein.

57.     On or about May 16, 2014, Defendant engaged in unlawful employment practices in violation of Section 2000e-2(a) of Title VII, by refusing to hire Woodward because of his sex.

58.     Defendant's decision not to hire Woodward was predicated on unlawful sex-based considerations, specifically that he is a transgender male and/or because Woodward did not conform to the Defendant's sex- or gender-based preferences, expectations, or stereotypes.

59.     The effect of the practices complained of above has been to deprive Woodward of equal employment opportunities and otherwise adversely affect his status as an employee because of his sex.

60.     The unlawful employment practices complained of in the forgoing paragraphs were intentional.

30.     The unlawful employment practices complained of in the forgoing paragraphs were done with malice or with reckless indifference to Woodward's federally protected rights.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in any unlawful practices that discriminates against an employee or applicant because of their sex, including on the basis of gender identity;

B.      Order injunctive relief, including policies, practices, and programs which provide equal employment opportunities regardless of sex and gender identity and which eradicate the effects of Defendant's past and present unlawful employment practices;

B.      Order Defendant to make Woodward whole, by providing appropriate back-pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

C.      Order Defendant to make Woodward whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described in the foregoing paragraphs, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

D.      Order Defendant to pay Woodward punitive damages for its malicious or recklessly indifferent conduct described in the foregoing paragraphs, in amounts to be determined at trial;

E.      Grant such further relief as the Court deems necessary and proper in the public interest; and

F.      Award the Commission its cost of this action.


James L. Lee
Acting General Counsel

Gwendolyn Reams
Associate General Counsel

Mary Jo O'Neill
Regional Attorney
Phoenix District Office

Loretta Medina
Supervisory Trial Attorney

*/s/ Iris Halpern*
Senior Trial Attorney
Phone: (303) 866-1374
Fax: (303) 866-1375
iris.halpern@eeoc.gov

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Denver Field Office
303 East 17th Avenue, Suite 410
Denver, CO 80203