IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 17-cv-02362-RBJ

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

and

EGAN J. WOODWARD,

    Intervenor Plaintiff,

v.

A&E TIRE, INC.,

    Defendant.

---

ORDER on A&E Motions to Dismiss

---

This matter is before the Court on defendant A&E Tire, Inc.'s, motions to dismiss Equal Employment Opportunity Commission's (EEOC) and Egan J. Woodward's complaints. ECF Nos. 18, 19 (Motions to Dismiss); ECF Nos. 1, 11 (Complaints). After reviewing the briefing, ECF Nos. 18, 19, 27, 34, this Court denies A&E's motions.

## I. BACKGROUND

**A. Factual Background**

For present purposes the Court construes the well-pleaded allegations of fact in plaintiffs' complaints as true. Plaintiffs allege that on May 15, 2014 A&E posted an ad for a managerial

position online.  ECF No. 1 at ¶16.  Mr. Woodward, a transgender man, completed an application and provided A&E with a copy of his resume on May 16, 2014.  *Id.* at ¶17-18.  On the same day, an A&E manager interviewed Mr. Woodward for roughly 45 minutes.  *Id.* at ¶21-23, 25.  During said interview, Mr. Woodward wore traditional male attire and a goatee, and the manager did not recognize that Mr. Woodward was transgender.  *Id.* at ¶24, 25.  Mr. Woodward and the manager apparently got along well during the interview and connected over their Midwestern roots.  *Id.* at ¶26-27, 29.

The two discussed salary expectations, and the manager stated at least twice that Mr. Woodward had the job if he could pass pre-employment testing such as a drug test and criminal background check.  *Id.* at ¶30-33, 40.  The manager then gave Mr. Woodward a tour of the company's premises, taking Mr. Woodward to various locations around the property and introducing him as the new manager to any employees they met along the way.  *Id.* at ¶36.  The manager also asked Mr. Woodward for design input on the new offices, asking him to draw up some plans.  *Id.*

Mr. Woodward completed a screening consent form which authorized the background check.  *Id.* at ¶42.  In response to questions on that form, Mr. Woodward provided the name he was assigned at birth, which is typically associated with the female sex, and also checked a box indicating that his sex was female.  *Id.* at ¶42-44.  After Mr. Woodward left A&E Tire, he received a phone call from the manager who said something to the effect of "I see on your drug test that you checked female."  *Id.* at ¶46.  Mr. Woodward confirmed that this was correct, and the manager stated "Oh, that's all I need" and abruptly hung up.  *Id.* at ¶47-48.

In the following weeks, Mr. Woodward contacted A&E several times in order to discuss completing the background screenings and starting work. *Id.* at ¶49. On June 10, 2014—a little less than a month since he was loosely promised the job—Mr. Woodward finally spoke with the manager. *Id.* at ¶51. Mr. Woodward was informed that the position was given to another applicant, who had applied on May 21, interviewed on June 6, and began work on June 10, 2014. *Id.* at ¶52-54.

**B. Procedural Background**

Mr. Woodward filed a charge with the EEOC alleging violations of Title VII by A&E Tire. ECF No. 1 at ¶6. Title VII of the Civil Rights Acts prohibits discrimination based on race, color, sex, religion, or national origin. *See* Title VII, 42 U.S.C. § 2000e-2(a)(1) (providing, in relevant part, "It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge . . . or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."). The EEOC is a governmental agency charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring federal actions for violations of such. *See* Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

Here, after Mr. Woodward filed a charge with the EEOC, the EEOC provided A&E Tire with notice of the charge against it. ECF No. 1 at ¶7–8. After conducting its own investigation, the Commission issued a determination on June 30, 2016, informing A&E that the EEOC had reasonable cause to believe that A&E Tire had violated Title VII when it failed to hire Mr. Woodward "because of his sex, male, and/or transgender status." *Id.* at ¶ 9–10. The EEOC

invited A&E Tire to join it in informal methods of conciliation in an effort to eliminate the unlawful employment practices and provide appropriate relief. *Id.* at ¶11. A&E Tire participated in conciliation, but ultimately the EEOC and A&E Tire were unable to reach an agreement acceptable to the EEOC. *Id.* at ¶12–13. As such, on June 27, 2017, the Commission issued A&E Tire a Notice of Failure of Conciliation. *Id.* at ¶14.

On September 29, 2017, the EEOC filed this suit against A&E Tire. ECF No. 1. On November 10, 2017 Mr. Woodward filed an unopposed motion to intervene, ECF No. 9, which was granted. ECF No. 10. On November 13, 2017 Mr. Woodward filed his complaint. ECF No. 11. On December 15, 2017 A&E Tire filed motions to dismiss both complaints. ECF Nos. 18, 19. The EEOC and Mr. Woodward filed a joint response, ECF No. 27, and A&E Tire filed a reply. ECF No. 34.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss the complaints must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to

relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

### III. ANALYSIS

A&E Tire asserts that plaintiffs' complaints must be dismissed for failure to state a claim under Fed. R. Civ. Pro. 12(b)(6). In particular, A&E argues that based upon Tenth Circuit authority, the complaints fail to state a viable Title VII claim as a matter of law, and plaintiffs do not allege sufficient facts that state a claim for relief plausible on its face. ECF No. 18 at 2.

To establish a prima facie case in the failure to hire context under Title VII, a plaintiff must show that: (1) plaintiff belongs to a protected class; (2) the plaintiff applied for and was qualified for a job for which the employer was seeking applicants; (3) despite being qualified, the plaintiff was rejected; and (4) after the plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 937 (10th Cir. 2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). At issue here is the first prong: defendant says that Mr. Woodward is not a member of a protected class.

Plaintiffs assert two theories to support Mr. Woodward's claim that he is a member of a protected class under Title VII. The first theory is that Mr. Woodward was not hired because of sex-stereotyping discrimination. That is, he experienced discrimination because his appearance (that of a stereotypical male) did not conform to social expectations of a person with his birth sex (female). The second theory is that Title VII prohibitions of discrimination "because of . . . sex" protect transgender individuals categorically.

5

### A. <u>Failure to Conform to Stereotypical Gender Norms</u>.

The Supreme Court has made it clear that Title VII prohibits discrimination not just on the basis of sex but also on the basis of traits that are a function of sex. *See Los Angeles Dept. of Water and Power v. Manhart,* 435 U.S. 702 (1978) (prohibiting discrimination based on life expectancy); *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (prohibiting discrimination based on nonconformity with gender norms). These decisions effectuated what the Supreme Court found Congressional intent to be in passing Title VII - that in employment, "qualifications [be] the controlling factor, so that race, religion, nationality, and sex become irrelevant." *Griggs v. Duke Power Co.,* 401 U.S. 424, 436 (1971)

The Supreme Court described the basis for sex-stereotyping discrimination in *Price Waterhouse v. Hopkins*. There, it found that Title VII prohibited sexual stereotyping, such as penalizing a candidate for not acting or dressing "more femininely," from playing a part in evaluating the candidacy of a female partnership candidate at an accounting firm. 490 U.S. at 235. The Supreme Court held that an employer cannot evaluate employees by "assuming or insisting that they matched the stereotype associated with their group." *Id.* at 251.

Since *Price Waterhouse*, courts have recognized the employment discrimination claims of transgender individuals as sex-stereotyping discrimination protected under Title VII. *See, e.g., Smith v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004); *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1048 (7th Cir. 2017). In *Etsitty v. Utah Transit Authority*, the Tenth Circuit held that although transgender individuals may not claim protection under Title VII solely based on their status as a transgender individual, Title VII

protections can nonetheless extend to transgender individuals who are the subject of adverse employment decisions where their identity as male or female is improperly taken into account. 502 F.3d 1215, 1222-1223 (2007). In coming to this conclusion, the Tenth Circuit cited the Sixth Circuit case, *Smith v. City of Salem*, which explained that "sex stereotyping based on a person's gender nonconforming behavior is impermissible discrimination, irrespective of the cause of that behavior; a label, such as 'transsexual,' is not fatal to a sex discrimination claim where the victim has suffered discrimination because of his or her gender non-conformity." 378 F.3d 566, 575 (6th Cir. 2004). In other words, Title VII protects all persons, including transgender persons, from discrimination based on gender nonconformity.

The Seventh Circuit has similarly adopted this approach. Though the Seventh Circuit in *Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081 (7th Cir. 1984), held that the term "sex" in Title VII does not categorically include transgender individuals, the Seventh Circuit in *Whitaker* subsequently held that "[t]his reasoning, however, cannot and does not foreclose Ash and other transgender students from bringing sex-discrimination claims based upon a theory of sex-stereotyping." 858 F.3d at 1047.

To deny the availability of a sex-stereotyping claim to a transgender individual would be to exclude that person from Title VII protections laid out in *Price Waterhouse*, where the Supreme Court embraced the view that "[i]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.'" 490 U.S. at 251 (citing *Manhart*, 435 U.S. at 707 n.13). Moreover, carving out transgender people from this protection would be incongruent. As the Eleventh Circuit put it, "A person is defined as transgender precisely

because of the perception that his or her behavior transgresses gender stereotypes." *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011) (holding that employment discrimination against a transgender editor at the Georgia's Office of Legislative Counsel constituted sex discrimination under the Equal Protection Clause). *See also Doe 1 v. Trump,* 275 F.Supp.3d 167, 210 (D.D.C. 2017) ("The defining characteristic of a transgender individual is that their inward identity, behavior, and possibly their physical characteristics, do not conform to stereotypes of how an individual of their assigned sex should feel, act and look. . . . By excluding an entire category of people from military service on this characteristic alone, the Accession and Retention Directives punish individuals for failing to adhere to gender stereotypes").

A&E Tires argues that Mr. Woodward and the EEOC do not put forward factual allegations that support a claim of sex-stereotyping discrimination. ECF No. 18 at 10. To allege that sex-stereotyping played a role in the employment decision, the plaintiff needs to show that "the employer relied upon sex-based considerations in coming to its decision." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 242 (1989). *Price Waterhouse* rejected an approach whereby the plaintiff would need to show that the employment decision was made "*solely* because of" the plaintiff's sex or make the plaintiff identify the precise role legitimate and illegitimate motivations played in an employer's decision. *Id.* at 245. Once a plaintiff shows that sex played a role in an employment decision, a defendant can avoid liability by showing that it would have made the same decision even if sex had not played a role. *Id.*

Here, plaintiffs allege facts that plausibly suggest sex-based consideration played a role in the decision not to hire Mr. Woodward. Plaintiffs allege that at Mr. Woodward's interview, the manager and Mr. Woodward got along well and the manager offered Mr. Woodward the job

8

upon his completion of pre-employment testing. ECF No.1 ¶ 33 & 40. After Mr. Woodward left this meeting, he received a call from the manager who inquired about Mr. Woodward indicating his sex as female on his background check form. ECF No.1 ¶ 46. After Mr. Woodward confirmed this information, the manager ended the call with no further follow-up questions regarding Mr. Woodward's candidacy. A & E Tires then accepted an application from a different applicant, interviewed this other applicant, and hired him. ECF No.1 ¶ 51.

A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Plaintiffs allege that the manager asked Mr. Woodward one follow-up question between the informal employment offer and the decision not to hire Mr. Woodward. This question concerned Mr. Woodward's sex. Mr. Woodward's appearance at his interview was that of a stereotypical male. On his background check form he indicated that his sex was female. These alleged facts permit a reasonable inference that Mr. Woodward's traits, behavior, or appearance at the interview, in not conforming to the stereotypical expectations of the sex he indicated on his background check form, affected the manager's decision. Defendant claims that the logical connection between the manager's "innocent inquiry" and the conclusion that this inquiry played a role in the hiring decision is "nothing more than surmise." ECF. No. 34 at n.1, 4. The Court disagrees – at the motion to dismiss stage, plaintiffs have stated a plausible claim, and defendant will have ample opportunity to contest the motivations underlying the inquiry.

Defendant also argues that plaintiffs' reference to *Smith* and *Tudor* is misplaced, because in those cases the plaintiffs had numerous and detailed examples of workplace discrimination, while Mr. Woodward's factual allegations are comparatively bare. ECF No. 34 at 2-3 (referring

to *Tudor v. SE. Okla. State Univ.*, CIV-15-324-C, 2015 WL 4606079 (W.D. Okla., July 10, 2015); *Smith v. City of Salem,* 378 F.3d 566 (6th Cir. 2004)). This argument fails for two reasons. First, the plaintiffs in the cited cases were bringing claims of harassment and discrimination in jobs they held, as opposed to claiming a discriminatory failure to hire. Presumably the *Smith* and *Tudor* plaintiffs would have more experiences with discrimination in a workplace they spend their days in than in a 45-minute interview and follow-up phone call. To require Mr. Woodward to allege a similar record of discrimination would essentially preclude failure to hire claims. The issue in Title VII is 'was the employment decision based on sex?' not 'how much harassment did plaintiff experience?' While the second question may be useful in proving the first, it's not dispositive here.

Second, the defendant argues that in both cited cases there are many examples of how the plaintiffs were subjected to discrimination because of nonconformance with sex-based stereotypes, whereas Mr. Woodward only alleges he is a transgender man to support his claim. ECF No. 34, at 4. In resolving this motion, the Court need not ignore common sense. Mr. Woodward did not conform to the sex-based expectations of a person born a woman -- the manager wouldn't have called him in confusion about the sex he indicated on his background check form if he did. Perhaps the manager did not take Mr. Woodward's gender nonconformance into account when deciding not to hire him. But, at the motion to dismiss stage, the Court believes that the plaintiffs have stated a plausible claim.

**B. Transgender Identity as a Protected Class – Scope of Title VII**

*Etsitty* held that Title VII's prohibition on discrimination "based on . . . sex" did not include transgender people as a class. 502 F.3d at 1222. Plaintiffs suggest that "[i]f the Court finds it

necessary to look beyond a sex-stereotyping theory, the Complaints also plausibly allege a claim of discrimination because of sex under Title VII." ECF No. 27 at 10. They argue that *Etsitty* left space "for arguments regarding the evolving understanding of the definition of 'sex'," and that while it is not necessary to resolving the motion to dismiss, "the portion of *Etsitty* that addresses the definition of sex should also be reconsidered." *Id.* at 12.

I decline the invitation to weigh in on the issue in this case. It is not for this Court to modify or reconsider a Tenth Circuit order. Nor in any event is it necessary to the decision on the pending motion, as plaintiffs themselves acknowledge. The Court finds that plaintiffs' Complaints provide sufficient factual material to state a viable claim that is plausible on its face. Accordingly, defendant's motions to dismiss [ECF Nos. 18, 19] are DENIED.

DATED this 5th day of September, 2018.

BY THE COURT:

*[signature: Brooke Jackson]*

_____
R. Brooke Jackson
United States District Judge